NELSON (MOORE v.). See Case No. 9,771.

---

## Case No. 10,112.

NELSON v. NATIONAL STEAMSHIP CO.

[7 Ben. 340.] [1]

District Court, E. D. New York. May, 1874.

BILL OF LADING—DAMAGE TO CARGO—BREAKAGE —NEGLIGENCE—EVIDENCE.

1. Casks of plumbago were brought in different ships of a line, under bills of lading which exempted the ship from damages resulting from leakage, or breakage, or from stowage, however such damage might be caused. On some of the bills of lading were memoranda, that the casks were loose when shipped. The consignees brought suit against the owner of the vessels to recover for plumbago lost out of the casks, as they claimed by reason of injury to the casks from careless handling: Held, that the exemption in the bills of lading was not sufficient to exempt the owners from loss arising from their negligence.

[Cited in The Montana, 17 Fed. 379.]

2. In the cases where the memoranda that the casks were loose were on the bills of lad-

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

ing, the presumption would be that any loss which occurred arose from such loose condition of the casks.

[This was a libel by Horatio Nelson against the National Steamship Company to recover damages for injury to goods shipped.]

Beebe, Wilcox & Hobbs, for libellants.
John Chetwood, for respondents.

BENEDICT, District Judge. This action is brought to recover damages of the National Steamship Company, for loss and injury to certain shipments of plumbago. It is founded upon seven different bills of lading, issued on seven different voyages, made by five different steamers all owned by the defendants.

Owing to the lapse of time and the number of shipments, there is much confusion in the evidence, and it is with difficulty that the facts appertaining to each shipment can be ascertained. It is clear, however, that in every one of the shipments casks of plumbago came out in bad order, and that there was not only a loss of part of the contents, but an injury to the remainder from the admixture of dirt, which occurred in shoveling up from the wharf plumbago which had escaped from the casks.

One of the grounds of defense is that the loss was caused by the fact that the casks were rotten and unable to retain their contents, and parts of staves are produced in court which are clearly unsound. These staves were taken from two casks in one of the shipments. With this exception the evidence as to a bad condition of the casks is general in its character, and insufficient to account for the bad order in which the merchandise arrived. On the other hand, there is evidence equally positive that the casks were good, and the claim is that the loss arose not from insufficiency of the casks but from the breaking of the staves caused by bad stowage.

None of the bills of lading contain any reference to a rotten or weak condition of the casks. The burden of showing that the loss arose from the rotten condition of the staves is therefore upon the defendants, and the general evidence produced to that effect does not enable me to charge this loss to a bad condition of the casks, except in the one instance where it is positively proved that two casks in the shipment were rotten. The main ground of defense is that the bills of lading relieve the defendants from liability for loss or damage arising from leakage or breakage, or resulting from stowage, however such damage may be caused. This exception in the bills of lading is not sufficient to exempt the defendants from loss arising from their negligence. The evidence discloses negligence in the stowage of the shipment by the Denmark, of May 2d (No. 1). A neglect of proper care of this merchandise while on the deck before delivery also appears. Damage from neglect in the stow-

age of the shipment by the Helvetia, of June 2d (No. 2), is also shown, as well as careless handling of the merchandise in landing, whereby some of the casks were broken and contents lost, together with injury to portions of it by admixture of dirt, &c., &c., while on the ship or on the wharf. The loss on these two shipments is therefore chargeable to the defendants.

The bill of lading, shipment by the Erin (No. 3), contains a memorandum that the casks were loose when shipped, and the presumption that such loss as appears from these casks, of such an article as plumbago, arose from the loose condition of the casks is sufficient to overcome any evidence in the case tending to show the loss to have resulted from bad stowage.

As to shipment by the Denmark (No. 4), it is not claimed that there was bad stowage, and no evidence of other neglect. As to shipment by the Queen (No. 5), the bill of lading contains a memorandum that the casks were loose when shipped, and there can be no recovery for the reasons above stated in respect to No. 3. As to shipment by the Queen (No. 6), it is not claimed that there was any bad stowage, and no evidence of other neglect. In shipment No. 7 were the two casks proved to be rotten, and the deficiency claimed should, upon the evidence, be charged to the bad condition of the casks.

My conclusion, therefore, is that the libellants are limited in their recovery to the loss they have sustained upon the two shipments first above mentioned (No. 1 and No. 2). Any loss of quantity or of value by the admixture of foreign matter upon these two shipments they are entitled to a decree for. A reference will be had to ascertain the amount of the damage in accordance with this opinion.